**WAJDA LAW GROUP, APC**
Nicholas M. Wajda (State Bar No. 259178)
6167 Bristol Parkway
Suite 200
Culver City, California 90230
Telephone: 310-997-0471
Facsimile: 866-286-8433
E-Mail: nick@wajdalawgroup.com
*Attorney for the Plaintiff*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD S. SANDMEIER, <br><br> Plaintiff, <br><br> v. <br><br> COLLECTION CONSULTANTS OF CALIFORNIA AND EQUIFAX INFORMATION SERVICES, LLC, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR DAMAGES** <br><br> 1. **VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §1681 ET SEQ.** <br><br> **DEMAND FOR JURY TRIAL** |

NOW COMES Plaintiff, Richard S. Sandmeier ("Plaintiff"), by and through his attorneys, Wajda Law Group, APC, complaining of the Defendants, Collection Consultants of California ("CCC"), Transunion, LLC, and Equifax Information Services, LLC ("Equifax") (collectively "Defendants"), as follows:

**PRELIMINARY STATEMENT**

1. The United States Congress found:

    (1) The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

1

(2) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.

(3) Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

2. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. (the "FCRA") to require fair and accurate reporting, promote efficiency for meeting the needs of commerce for consumer credit, and protect consumer privacy.

3. This action seeks actual, statutory, and punitive damages, costs and reasonable attorneys' fees for Defendants' willful and/or negligent violations of the Fair Credit Reporting Act ("FCRA"); 15 U.S.C. § 1681 et seq.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337(a).

5. Venue is proper as a substantial part of the events or omissions giving rise to the claims occurred in this judicial district. 28 U.S.C. § 1391(b)(2).

## PARTIES

6. Plaintiff is a natural person over 18 years of age who, at all times relevant, resided in the Eastern District of California.

7. Plaintiff is a "consumer" as defined by 15 U.S.C. §§ 1681a(b) and (c) and 15 U.S.C §1692a(3).

8. Plaintiff is a "person" as defined by 15 U.S.C. § 1681a(b).

9. CCC is a California corporation with its principal place of business in Glendale, California. CCC is a furnisher of information to the major credit reporting agencies.

10. CCC regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions, such as Plaintiff's transactions at issue

2

in this lawsuit and described herein, and is, therefore, a "furnisher of information" as defined by 15 U.S.C. § 1681s-2.

11. Equifax is a Delaware limited liability company with its principal place of business in Atlanta, Georgia.

12. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

13. Equifax is regularly engaged in the business of "assembling or evaluating, and maintaining, for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity" on a nationwide basis, as defined by 15 U.S.C. § 1681a(p).

14. In its 2018 Annual Report, Equifax reported it "delivered over two billion consumer credit files - more than six million per day - to lenders to facilitate mortgages, auto loans, credit cards, apartment rentals and other financial transactions." *See* Equifax 2018 Annual Report, available at: https://investor.equifax.com/~/media/Files/E/Equifax-IR/Annual%20Reports/2018-annual-report.pdf (last accessed on March 17, 2020).

## FACTUAL ALLEGATIONS

15. On or about August 4, 2017, Plaintiff incurred two medical debts from CHOC Children's Specialists. On August 16, 2018, Plaintiff incurred a third medical debt from CHOC Children's Specialists (collectively "subject medical debts").

16. Subsequently, due to economic hardship, Plaintiff defaulted on the subject medical debts. Thereafter, the subject medical debts were transferred to CCC for collection.

## PLAINTIFF'S BANKRUPCTY CASE

17. On March 8, 2019, Plaintiff filed a Chapter 7 Voluntary Bankruptcy Petition in the United States Bankruptcy Court, Case Number 19-21417 ("Bankruptcy Case).

3

18. In Schedule E/F of his Bankruptcy Petition, Plaintiff listed both CHOC and CCC as having claim for the subject medical debts in the amount of $847.00.

19. CCC and CHOC were all notified of Plaintiff's bankruptcy filing by the Bankruptcy Noticing Center ("BNC").

20. A 341 Meeting of the Creditors occurred on April 16, 2019 and was concluded with a finding of no assets.

21. At no time did CHOC or CCC object.

22. On June 24, 2019, Plaintiff received an Order of Discharge, discharging, among other debts, the subject medical debts.

23. The BNC then sent notice of Plaintiff's bankruptcy discharge to CCC and CHOC.

**CCC's Furnishing of Information to the Credit Reporting Agencies**

24. On or about January 27, 2020, to ensure that all discharged debts and other debts were reporting accurately, Plaintiff obtained his credit reports.

25. Plaintiff discovered that CCC and Equifax were inaccurately reporting the subject medical debts in "Collections," with a status of "Open," a balance of "--," remarks of "Consumer disputes this account information medical," and without noting that the subject medical debts were discharged in bankruptcy.

26. On or about January 28, 2020, Plaintiff sent a dispute letter, via U.S. certified mail, to Equifax requesting that Equifax investigate and correct the inaccurate reporting of the subject medical debts.

27. On information and belief, Equifax notified CCC of Plaintiff's dispute within 5 days of receiving the same.

28. On March 4, 2020, Plaintiff pulled his Credit Karma credit report provided by Equifax.

4

29. Plaintiff was shocked to discover that CCC and Equifax continued to report the subject medical debts as follows:

| COLLECTION CONSULTANTS OF CALI | | |
|---|---|---|
| **Account Details** | | **Creditor Contact Details** |
| Last Reported | Mar 08, 2019 | COLLECTION CONSULTAN |
| Collection Agency | COLLECTION CONSULTANTS OF CALI | 6100 SAN FERNANDO RD 211 GLENDALE, CA 91201 (855) 976-7798 |
| Original Creditor | CHOC CHILDRENS SPECIALISTS | |
| Status | Open | |
| Opened Date | Aug 16, 2018 | |
| Closed Date | -- | |
| Responsibility | Individual Account. | |
| Balance | -- | |
| High Balance | -- | |
| Remarks | Consumer disputes this account information Medical | |

5

**COLLECTION CONSULTANTS OF CALI**

| Account Details | | Creditor Contact Details |
|---|---|---|
| Last Reported | Mar 08, 2019 | COLLECTION CONSULTAN |
| Collection Agency | COLLECTION CONSULTANTS OF CALI | 6100 SAN FERNANDO RD 211 GLENDALE, CA 91201 (855) 976-7798 |
| Original Creditor | CHOC CHILDRENS SPECIALISTS | |
| Status | Open | |
| Opened Date | Aug 04, 2017 | |
| Closed Date | -- | |
| Responsibility | Individual Account. | |
| Balance | -- | |
| High Balance | -- | |
| Remarks | Consumer disputes this account information Medical | |

6

| COLLECTION CONSULTANTS OF CALI | |
|---|---|
| **Account Details** | **Creditor Contact Details** |
| Last Reported: Mar 08, 2019 | COLLECTION CONSULTAN |
| Collection Agency: COLLECTION CONSULTANTS OF CALI | 6100 SAN FERNANDO RD 211 |
| Original Creditor: CHOC CHILDRENS SPECIALISTS | GLENDALE, CA 91201 |
| Status: Open | (855) 976-7798 |
| Opened Date: Aug 04, 2017 | |
| Closed Date: -- | |
| Responsibility: Individual Account. | |
| Balance: -- | |
| High Balance: -- | |
| Remarks: Consumer disputes this account information Medical | |

30. The reporting of the subject medical debts is inaccurate, false, and misleading because the subject medical debts should not be reporting in "Collections" with a status of "Open," remarks of "Consumer disputes this account information medical," and a balance of "--."  Instead, CCC and Equifax should report the subject medical debts with a zero balance and with a status and remarks of "discharged in bankruptcy."  Plaintiff is no longer liable for the subject medical debts due to his bankruptcy discharge.

31. Accordingly, Plaintiff continues to be harmed by the inaccurate reporting the CCC trade lines.

32. This entire experience has imposed distrust, frustration, anxiety, and emotional distress on the part of the Plaintiff.

33. Furthermore, this entire experience has resulted in the expenditure of considerable time, costs in pulling credit reports, and a credit denial stemming from, in whole or in part, the inaccurate credit reporting of the subject medicals debts.

## **EFFECT OF CONSUMER REPORTS WHICH CONTAIN INACCURATE OR MISLEADING INFORMATION**

34. Under the FCRA, the term "consumer report" generally refers to:

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for:
>
> i. Credit or insurance to be used primarily for personal, family, or household purposes;
>
> ii. employment purposes; or
>
> iii. any other purpose authorized under section 1681b of this title.
>
> 15 U.S.C. § 1681a(d)(1).

35. The information contained in a consumer report bears on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, and personal characteristics.

36. The information contained in a consumer report can have a tremendous effect on the consumer, including the consumer's:

   a. Eligibility for credit (mortgages, personal loans, credit cards);
   b. Interest rate charged on credit;
   c. Potential for refinancing of existing credit;
   d. Eligibility for rental housing;
   e. Eligibility for telephone and utility services;
   f. Eligibility for and the terms of insurance products;
   g. Employment or potential employment; and
   h. Eligibility for government benefits.

8

## CLAIMS FOR RELIEF

### COUNT I
### CCC'S VIOLATION(S) OF 15 U.S.C. § 1681 *et seq.*

37. Plaintiff restates and re-alleges paragraphs 1 through 36 as though fully set forth herein.

38. Plaintiff is a "consumer" as the term is defined under 15 U.S.C. §§1681a(c) and (b).

39. "CCC" is a "person" as defined by 15 U.S.C. §1681a(b).

40. CCC is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

41. At all times relevant, the above mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

42. CCC violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving a request for an investigation from Equifax.

43. Had CCC reviewed the information provided Equifax, it might have corrected the inaccurate designation of the CCC trade lines (as described in paragraphs 41 and 42 above) and transmitted the correct information to the Equifax. Instead, CCC wrongfully and erroneously verified its inaccurate reporting without conducting a reasonable investigation.

44. CCC violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the results of any reasonable investigation or reinvestigation of Plaintiff's dispute to Equifax.

45. CCC violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to promptly modify, delete, or permanently block the inaccurate information in Plaintiff's credit files. Instead, CCC continued to report the inaccurate, incomplete, and misleading information in Plaintiff's credit file after receiving Plaintiff's detailed disputes as described in paragraphs 41 and 42 above.

46. CCC failed to conduct a reasonable reinvestigation of its reporting of the CCC trade line or delete the inaccurate reporting from Plaintiff's credit files within 30 days of receiving notice of Plaintiff's disputes from Equifax under 15 U.S.C. §1681i(a)(1).

47. CCC violated 15 U.S.C. §1681s-2(b)(2) by failing to take the required action with respect to Plaintiff by the deadlines set forth in 15 U.S.C. §1681i(a)(1).

48. Despite the blatantly obvious errors in Plaintiff's credit files, and Plaintiff's efforts to correct the errors, CCC did not correct the errors or trade lines to report accurately. Instead, CCC wrongfully re-reported, furnished, and re-furnished false, erroneous and misleading information, after Plaintiff's dispute, to one or more third parties.

49. A reasonable investigation by CCC would have confirmed the veracity of Plaintiff's disputes, yet the inaccurate information continues to be reported in Plaintiff's Equifax's credit file.

50. Had CCC taken steps to investigate Plaintiff's valid disputes or Equifax's requests for investigation, the erroneous credit reporting of the CCC trade lines might have been corrected. Plaintiff provided all relevant information regarding his disputes in his requests for investigation.

51. By deviating from the standards established by the lending industry and the FCRA, CCC acted with reckless and willful disregard for its duty as a furnisher to report accurate and complete consumer credit information to Equifax.

**WHEREFORE**, Plaintiff, RICHARD S. SANDMEIER, respectfully prays this Honorable Court for the following relief:

   a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

   b. An order directing CCC to immediately delete the inaccurate information from Plaintiff's credit reports and credit files;

    c. Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;

    d. Award Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;

    e. Award Plaintiff punitive damages, in an amount to be determined at trial, for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

    f. Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

    g. Award any other relief as this Honorable Court deems just and appropriate.

## COUNT II
### EQUIFAX'S VIOLATION(S) OF 15 U.S.C. § 1681 *et seq.*

52. Plaintiff restates and re-allege paragraphs 1 through 36 as though fully set forth herein.

53. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

54. Equifax is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

55. At all times relevant, the above mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

56. If a consumer notifies a credit reporting agency of a dispute concerning the accuracy of any item of credit information, the FCRA requires the credit reporting agency to reinvestigate free of charge and record the current status of the disputed information, or delete the item within 30 days of receiving the dispute. 15 U.S.C. §1681i(a)(1)(A).

57. Plaintiff provided Equifax with all relevant information in his requests for investigation and reinvestigation to reflect that the subject medical debts were discharged in Plaintiff's bankruptcy case.

58. Equifax prepared Plaintiff's consumer reports containing inaccurate, incomplete, and materially misleading information by reporting the CCC trade lines for the subject medical debts in "Collections" with a balance of "--," a status of "Open," remarks of "consumer disputes this account information medical," and without notating the three subject medical debts as "discharged in bankruptcy."

59. Equifax violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished, and refurnished, as they related to Plaintiff. Equifax prepared patently false, incomplete, and a materially misleading consumer reports concerning Plaintiff. After Plaintiff's written detailed dispute, Equifax had actual knowledge that the subject medical debts were being misreported.

60. Equifax violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was accurate and to then subsequently delete or correct the information in Plaintiff's credit file.

61. Equifax violated 15 U.S.C. §1681i(a)(2) by failing to provide notification of Plaintiff's dispute to CCC. Upon information and belief, Equifax failed to include all relevant information as part of the notice to CCC regarding Plaintiff's dispute that Equifax received from Plaintiff.

62. Equifax violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from CCC.

63. Equifax violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the incorrect information that was the subject of Plaintiff's dispute.

64. Equifax knew that the inaccurate designations of the CCC trade lines on Plaintiff's consumer reports would have a significant adverse effect on Plaintiff's creditworthiness.

65. Despite actual knowledge that Plaintiff's credit file contained erroneous information, Equifax readily sold Plaintiff's inaccurate, incomplete, and misleading report to one or more third parties, thereby misrepresenting facts about Plaintiff and, ultimately, Plaintiff's creditworthiness.

66. The FCRA requires that the credit reporting industry implement procedures and systems to promote accurate credit reporting.

67. By deviating from the standards established by the credit reporting industry and the FCRA, Equifax acted with reckless disregard for its duties to report accurate and complete consumer credit information.

68. It is Equifax's regular business practice to report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

69. Equifax's non-compliance with the requirements of the FCRA is indicative of the reckless, willful, and wanton nature of its conduct in maintaining Plaintiff's consumer files and reporting Plaintiff's credit information.

70. Equifax's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff.

**WHEREFORE**, Plaintiff, RICHARD S. SANDMEIER, respectfully prays this Honorable Court for the following relief:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. An order directing Equifax to immediately delete the inaccurate information from Plaintiff's credit reports and credit files;

c. Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

    d.  Award Plaintiff statutory damages of $1,000.00 for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

    e.  Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

    f.  Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1681n(3) and 15 U.S.C. §1681o(2); and

    g.  Award any other relief as this Honorable Court deems just and appropriate.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: March 27, 2020　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　Nicholas M. Wajda
　　　　　　　　　　　　　　　　　　　　**WAJDA LAW GROUP, APC**
　　　　　　　　　　　　　　　　　　　　6167 Bristol Parkway
　　　　　　　　　　　　　　　　　　　　Suite 200
　　　　　　　　　　　　　　　　　　　　Culver City, California 90230
　　　　　　　　　　　　　　　　　　　　Telephone: 310-997-0471
　　　　　　　　　　　　　　　　　　　　Facsimile: 866-286-8433
　　　　　　　　　　　　　　　　　　　　E-mail: nick@wajdalawgroup.com